# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ACECO VALVES, LLC,                     )
                                       )
      Plaintiff,                  )
                                       )
v.                                     )          Case No. CIV-21-368-D
                                       )
PATRICIA WOLF, *et al.*,               )
                                       )
      Defendants.                 )

## ORDER

Before the Court are cross-motions for summary judgment filed by Defendant Patricia Wolf [Doc. No. 100], and Plaintiff Aceco Valves, LLC [Doc. No. 108]. The motions are fully briefed and at issue.

### *Background*

This case involves the sale of a small-town valve manufacturing company. Along with her husband, Defendant Patricia Wolf owned and operated Aceco Valve, Inc., for many years in Mounds, Oklahoma. Multiple Wolf family members worked at Aceco, including Ms. Wolf's grandson, Defendant Orvel "DoLee" Wolf, II. On April 6, 2018, Ms. Wolf entered into an Asset Purchase Agreement ("APA") to sell Aceco Valve, Inc., and all of its assets to MNergy, LLC. The APA was entered into by and between MNergy, LLC, as buyer, Aceco Valve, Inc., as seller, and Patricia Wolf. After the purchase, MNergy, LLC changed its name to Aceco Valves, LLC.

The APA contained language which prohibited Ms. Wolf and her "Affiliates" from engaging in certain competitive activities for a three-year period beginning on April 6, 2018 (the "Restricted Period").[1] The APA defines an "Affiliate" as, *inter alia*:

> [W]ith respect to a specified Person,[2] . . . if that Person . . . is a natural person, the spouse of the person and any individual who is related to that person or that person's spouse within the third degree.

Pl.'s Mot. for Summ. J., Ex. 1 at 6. For purposes of the APA, Ms. Wolf's grandson, DoLee, is an "Affiliate." The APA provides that Plaintiff is entitled to an accounting and repayment of profits realized by Ms. Wolf or her Affiliates in the event the provision restricting competition and solicitation is breached.[3]

In 2020, DoLee began speaking with Defendant Brad Neal about forming a new valve company, O.W. Valve, LLC. Mr. Neal was a long-tenured employee of Aceco and worked as its general manager under the Wolfs. He continued to work for Aceco after the April 6, 2018, sale and was considered a "Buyer Employee" under the APA. The

---

[1] This prohibition is set forth in Provision 5.2 of the APA. Because Provision 5.2 is critical to the issues presented, it will be quoted in the discussion below.

[2] The APA defines "Person" as "any natural person or Entity." Pl.'s Mot. for Summ. J., Ex. 1 at 12.

[3] The APA specifically provides:

> **5.6 Accounting for Profits**.  If any Seller or Wolf violates any of its obligations under this Article 5, Buyer and its Affiliates shall be entitled to an accounting and repayment of all profits, compensation, commissions, remuneration's or benefits that Seller or Wolf, or any other Affiliates of Wolf, directly or indirectly has realized or may realize as a result of, growing out of or in connection with any such violation.

Pl.'s Mot. for Summ. J., Ex. 1 at 43.

discussions between Mr. Neal and DoLee prompted Mr. Neal to resign from his managerial

position at Aceco on November 23, 2020. His resignation email states:

> I was offered a position this weekend to run another valve company for the
> Wolf's. They made me an offer I could not refuse. I have attached my
> resignation letter. He met the salary I asked for which is double what I am
> currently making. I had to make the decision immediately because they want
> to start [their] new company on December 8th.

Pl.'s Mot. for Summ. J, Ex. 7.

Shortly after Mr. Neal resigned, DoLee hired him at O.W. Valve. DoLee registered

O.W. Valve as a limited liability company with the Oklahoma Secretary of State on

December 1, 2020.

Plaintiff asserts three causes of action, which arise out of the formation and launch

of O.W. Valve, against Ms. Wolf: breach of contract, accounting, and civil conspiracy. Ms.

Wolf claims she is entitled to judgment as a matter of law with respect to Plaintiff's breach

of contract claim because there is no evidence indicating she is carrying on a similar

business. According to Ms. Wolf, because Plaintiff's breach of contract claim fails, its

accounting and civil conspiracy claims must also fail. Conversely, Plaintiff seeks partial

summary judgment on its breach of contract claim, arguing that Ms. Wolf breached an

enforceable provision of the APA based on the conduct of her Affiliate, DoLee Wolf.

### *Standard of Decision*

Summary judgment is proper "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

3

genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* Fed. R. Civ. P. 56(c)(1)(A).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "no evidence needs to be considered other than that filed by the parties." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation omitted).

*Discussion*

**I.      Plaintiff is not entitled to judgment as a matter of law that Ms. Wolf breached the APA based solely upon the actions of her Affiliate, DoLee Wolf.**

Under Oklahoma law, which expressly controls here, contracts in restraint of trade are generally void, subject to a few exceptions. *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1170 (Okla. 1989). The general rule is stated in Okla. Stat. tit. 15, § 217: "Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void." Section 217 "prohibits only unreasonable restraints" but permits reasonable restraints protecting against unfair competition. *Bayly, Martin & Fay, Inc.*, 780 P.2d at 1172.

The parties disagree regarding whether the Court may find that Ms. Wolf, as a matter of law, breached Provision 5.2(d) of the APA based solely upon the actions of her Affiliate, DoLee Wolf. Specifically, Provision 5.2 states:

> **5.2 Covenants by Seller and Wolf**. Except as otherwise provided in Section 5.3,[4] during the Restricted Period, neither Seller nor Wolf or any of their respective Affiliates will engage (nor will they allow any of their Affiliates to engage and will cause their Affiliates to not engage) in any Competitive Activity or acquire or otherwise own or hold any equity or beneficial ownership interest in any Competitor, including not engaging (whether on his or her own behalf or on behalf of any other Person) in any activities similar to those described in subsections (a) through (e) below, except in furtherance of Buyer's business with the prior written approval of Buyer:
>
> (a) provide any Products and Services in the Territory;
> (b) solicit any Customer for purposes of marketing, selling or providing Products and Services to such Customer;

---

[4] Neither party contends Provision 5.3 is relevant to this dispute.

(c) accept as a customer any Customer for purposes of marketing, selling or providing Products and Services to such Customer;
(d) induce or attempt to induce any Buyer Employee to terminate their employment with Buyer or its Affiliates; or
(e) interfere with the business relationship between a Customer, Buyer Employee or supplier and Buyer or its Affiliates.

Pl.'s Mot. for Summ. J., Ex. 1 at 42.

Ms. Wolf argues that Provision 5.2 violates Section 217 to the extent that it seeks to restrain the trade of DoLee, a non-signatory Affiliate. Plaintiff claims that Section 217 does not apply because enforcing Provision 5.2 against Ms. Wolf does not restrain trade. Alternatively, Plaintiff alleges that even if Provision 5.2 operates as a restraint of trade, it is a permissible restraint under either Okla. Stat. tit. 15, § 218, or the "rule of reason" test.

In support of its position that Section 217 does not apply, Plaintiff notes that it is not "seeking to enforce [Article 5's] covenants against DoLee or O.W. Valve. Rather, [Plaintiff] seeks only to hold Ms. Wolf accountable for her valid and enforceable promise to make [Plaintiff] whole if any of her Affiliates, like DoLee, engaged in any prohibited activity under [Provision] 5.2." Pl.'s Resp. Br. [Doc. No. 105] at 25. In short, Plaintiff asserts that holding Ms. Wolf accountable for the prohibited actions of her Affiliates "does not restrain those Affiliates from engaging in competition." Pl.'s Mot. for Summ. J. at 11.

Although Plaintiff does not seek damages from DoLee for breaching the APA, this fact is not dispositive of whether Provision 5.2 functions as a restraint of trade in violation of Section 217. Indeed, Provision 5.2, by its express language, seeks to suppress the activities of Ms. Wolf and certain non-signatory Affiliates, including DoLee, by

6

prohibiting them from engaging in various forms of "Competitive Activity."[5] *See* Pl.'s Mot. for Summ. J., Ex. 1 at 42 ("[N]either Seller nor Wolf or any of their respective Affiliates will engage (nor will they allow any of their Affiliates to engage and will cause their Affiliates to not engage) in any Competitive Activity . . . ."). Thus, Provision 5.2 of the APA falls squarely within the scope of Section 217, as it functions as a "contract by which any one is restrained from exercising a lawful profession, trade or business of any kind." Okla. Stat. tit. 15, § 217.

An exception to the general rule set forth in Section 217 is enumerated in Okla. Stat. tit. 15, § 218, which provides:

> One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county and any county or counties contiguous thereto, or a specified city or town or any part thereof, so long as the buyer, or any person deriving title to the goodwill from him carries on a like business therein. Provided, that any such agreement which is otherwise lawful but which exceeds the territorial limitations specified by this section may be deemed valid, but only within the county comprising the primary place of the conduct of the subject business and within any counties contiguous thereto.

Here, there is no real dispute that, by acquiring substantially all of Aceco's assets from Ms. Wolf, Plaintiff also acquired Aceco's goodwill. *See* Patricia Wolf's Mot. for Summ. J. at 9 ("To the extent Article 5 of the APA seeks to restrain trade beyond what is allowed in [Section] 218, it is void."). But whether Section 218 authorizes parties to an agreement to restrain the trade of a non-signatory—in this case, DoLee—is another matter.

---

[5] "Competitive Activity" is defined as "being employed by, providing consulting or other services to, or being an agent or independent contractor of, [any person or business that provides any Products or Services in the Territory]." *See* Pl.'s Mot. for Summ. J., Ex. 1 at 41.

Plaintiff has presented no authority, and the Court is aware of none, which supports its position that Section 218 permits the seller of a business to agree, on behalf of a non-signatory, to refrain from engaging in certain competitive activities in a particular area, or otherwise extends to any number of non-signatory affiliates.

Plaintiff cites *Smoot v. B & J Restoration Servs., Inc.*, 279 P.3d 805 (Okla. Civ. App. 2012) in support of its position, but the issues in *Smoot* are readily distinguishable from those here. *Smoot* involved the sale of a business, B & J Restoration, by its owners Brandon and Julie Hopper. As part of the sale, Brandon Hopper executed a non-compete agreement as president of B & J; the agreement was not signed by Julie Hopper. The agreement prohibited the Hoppers from diverting business and employees from B & J after the sale.[6]

Although Julie Hopper did not sign the separate non-compete agreement, the agreement contained language clarifying that "[s]eller represents and warrants that it has the authority to bind [seller's] officers, directors, shareholders, partners and owners to these terms."[7] *Id.* at 812-813. And indeed, no argument was made that Brandon Hopper lacked the authority to bind Julie Hopper, as corporate secretary of B & J, to the terms of the non-compete agreement. Ultimately, the court held the Hoppers liable based in part on the Hoppers' hiring of their former business's employees.

---

[6] Notably, Brandon and Julie Hopper both signed a separate purchase agreement, containing identical language to the non-compete agreement, in which they were restricted from competing with the buyer.

[7] There was no dispute that Brandon and Julie Hopper were the only two officers, directors, shareholders, and owners of B & J.

Unlike the individual defendants in *Smoot*, DoLee is not a transferor under the terms of the APA. *See* Pl.'s Mot. for Summ. J., Ex. 1 at 6 (listing the parties to the APA as MNergy, LLC, Aceco Valve, Inc., and Patricia A. Wolf). Nor is there any indication that Ms. Wolf was authorized to bind DoLee to the APA's terms. Certainly, *Smoot* supports enforcing certain provisions of Article 5 against Ms. Wolf, for her own actions, pursuant to Section 218. But it does not stand for the proposition that the seller of a business, under Section 218, may inherently restrain the competitive activity of a non-signatory. *See Farren v. Autoviable Servs. Inc.*, 508 P.2d 646, 648 (Okla. 1973) (Section 218 allows parties "to mutually agree, as a part of the value of the business transferred, that the transferee will be protected *from his transferor* who might use his previously acquired experience, contacts and expertise to promote his own interests in the same filed of business in competition with his transferee.") (emphasis added); *Inergy Propane, LLC v. Lundy*, 219 P.3d 547, 554 (Okla. Civ. App. 2008) ("The obvious intention of *one who sells a business* and agrees not to compete with the buyer is to sell the goodwill of that business.") (emphasis added); Okla. Stat. tit. 15, § 218 (allowing "one *who sells the goodwill of a business*" to agree to refrain from carrying on a similar business) (emphasis added).

Plaintiff's attempt to argue that the rule of reason test authorizes a restraint of DoLee's trade is similarly misguided. As discussed, Section 217 "prohibits only unreasonable restraints" but permits reasonable restraints protecting against unfair competition. *Bayly, Martin & Fay, Inc.*, 780 P.2d at 1172. To determine whether a restraint is reasonable, a court may consider (1) "the relevant market; (2) what is the effect of the restraint on competition in that market; and (3) if the effect is anticompetitive, are there

any procompetitive benefits that outweigh the anticompetitive effects." *Inergy Propane, LLC*, 219 P.3d at 556; *see also Loewen Grp. Acquisition Corp. v. Matthews*, 12 P.3d 977, 980 (Okla. Civ. App. 2000) (citing *Tatum v. Colonial Life & Acc. Ins. Co. of Am.*, 465 P.3d 448, 451-52 (Okla. 1970) and *Bayly, Martin & Fay, Inc.*, 780 P.2d at 1176 (Opala, V.C.J and Lavender, J., concurring in part and dissenting in part)).

In its attempt to argue that the rule of reason test authorizes restraint of DoLee's trade, Plaintiff claims that Provision 5.2 should be viewed as procompetitive and consistent with the state's public policy of encouraging business. It asserts that "[f]ree reign to sell a company, agree to not compete, and then compete would chill business purchases." Pl.'s Mot. for Summ. J. at 15. Even assuming such an effect would occur, Plaintiff's argument improperly conflates the actions of Ms. Wolf and DoLee. DoLee neither sold Aceco, nor agreed not to compete. Yet the APA purports to restrict him from competing by virtue of his "Affiliate" status. *See* Pl.'s Mot. for Summ. J., Ex. 1 at 42 ("[N]either Seller nor Wolf or any of their respective Affiliates will engage (nor will they allow any of their Affiliates to engage and will cause their Affiliates to not engage) in any Competitive Activity . . . ."). Although Plaintiff's argument may support enforcing the APA against Ms. Wolf for her own competitive actions, Plaintiff does not seek summary judgment on such grounds.

As with Section 218, Plaintiff fails to cite to any authority indicating that the rule of reason test permits a party to contract, on behalf of a non-signatory, not to engage in a competing form of business. Thus, the Court is unable to conclude that the rule of reason test permits a finding that Ms. Wolf is liable under the APA based solely on the actions of her Affiliate, DoLee. *See Express Servs., Inc. v. Averette*, No. 06-820-C, 2007 WL

1888652, at *4 (W.D. Okla. June 29, 2007) (acknowledging the rule of reason test but finding that a contract's restrictions unreasonably restricted trade due to its impact on the opportunities of persons not a party to the agreement).

## II.    Ms. Wolf is not entitled to judgment as a matter of law with respect to Plaintiff's breach of contract, accounting, or civil conspiracy claims.

As discussed, there is no real dispute that Plaintiff acquired Aceco's goodwill at the time it purchased all of Aceco's assets from Ms. Wolf. And indeed, Ms. Wolf acknowledges that Section 218 authorizes the parties to contract for a restraint of her trade. *See* Patricia Wolf's Mot. for Summ. J. at 9 (acknowledging Section 218 and arguing that Article 5 is only void to the extent it seeks to restrain the trade of her non-signatory Affiliates). Nonetheless, Ms. Wolf maintains that she is entitled to judgment as a matter of law regarding Plaintiff's breach of contract claim because there is "no evidence that she is 'carrying on a similar business within a specified county or any counties contiguous thereto.'" *Id.* (quoting Okla. Stat. tit. 15, § 218). She asserts that she cannot be held liable for breaching the terms of Article 5 of the APA because she has neither invested in O.W. Valve, nor received any profit, compensation, or benefit from it.

Under the current record, material facts remain in dispute regarding Ms. Wolf's involvement with respect to the formation and launch of O.W. Valve during the Restricted Period. Accordingly, the Court is unable to conclude that this issue is "so one-sided that one party must prevail as a matter of law," and must necessarily find that Ms. Wolf is not entitled to judgment as a matter of law regarding Plaintiff's breach of contract claim. *Anderson*, 477 U.S. at 251-52.

Finally, Ms. Wolf's arguments related to Plaintiff's accounting and civil conspiracy claims are operative only upon a finding that she is entitled to judgment as a matter of law on the breach of contract claim. Absent such a finding, the Court concludes that Ms. Wolf is not entitled to judgment as a matter of law on Plaintiff's accounting or civil conspiracy claims.

### Conclusion

**IT IS THEREFORE ORDERED** that Defendant Patricia Wolf's Motion for Summary Judgment [Doc. No. 100] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Aceco Valves, LLC's Cross Motion for Partial Summary Judgment Against Defendant Patricia Wolf [Doc. No. 108] is **DENIED.**

**IT IS SO ORDERED** this 17th day of March, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge